# Joynes to use *v.* Pennsylvania Railroad Company, Appellant.

*Practice C. P.—Pleadings—Statement of claim—Amendments Carriers—Freight rates.*

1. Amendments should be liberally allowed, and the test of their propriety is whether they introduce a new cause of action.

2. In an action against a railroad company to recover an alleged overcharge of freight rates, it is not improper to permit the plaintiff to amend his statement a second time, where it appears that the second amendment merely amplifies the first, is not inconsistent with the original statement, makes no real departure from the original cause of action, namely, the overcharge in freight rates, and adds nothing under which the damages could be increased.

*Carriers—Common carriers—Freight rates—Overcharge—Estimated and actual rates.*

3. In an action against a railroad company to recover damages for an alleged overcharge of freight rates on potatoes, a verdict and judgment for plaintiff will be sustained where it appears that the official tariff of rates stipulated that when it was "practicable" for the potatoes to be weighed, they should be charged for at actual weight, but when it was not "practical" to weigh the same, then estimated weights according to a schedule were to govern, and the evidence shows that the railroad company had ample facilities at various points to weigh the potatoes in question both by hand-scales and track-scales.

4. In such a case it is proper for the court to admit testimony concerning the contents of record cards which indicated that some of the cars had been actually weighed at a particular station. The cards themselves would be the best evidence, and should have been called for if the plaintiff desired to use them; but if there is other ample and uncontradicted testimony to sustain a finding that it would have been practicable to weigh the potatoes, the error is a harmless one, and not a ground for reversal.

5. In such a case it is also harmless error for the trial judge to refer to the "weight" and "preponderance" of the evidence in spite of the fact that the defendant introduced no testimony.

*Practice, C. P.—Trial—Withdrawal of juror.*

6. Where at a trial counsel asks the court to withdraw a juror

and continue the case on account of an improper statement by a witness, and upon the court's refusal rests upon his exception to the refusal, without requesting the court to warn the jury to disregard the answer, the appellate court will assume that all parties felt that no material harm had been done, and will not reverse the judgment because the trial judge failed to strike the answer from the record.

Argued Oct. 26, 1911.   Appeal, No. 175, Oct. T., 1911, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1906, No. 238, on verdict for plaintiff in case of H. W. Joynes to use of W. W. Joynes v. The Pennsylvania Railroad Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Trespass to recover damages for overcharge in freight rates.

At the trial it appeared that plaintiff is a produce merchant at Pittsburgh.   His principal business is the buying and selling of potatoes.   During the years 1900 to 1905 inclusive, he purchased on the eastern shore of Maryland some 800 cars of Irish and sweet potatoes, all of which were consigned to him at the Pennsylvania Lines produce yards at Pittsburgh.   The shipments were from thirty-two stations on the N. Y. P. & N. R. R. Co., coming into Pittsburgh over the lines of the defendant. The defendant had in force a tariff duly filed with the Interstate Commerce Commission fixing the rates on potatoes, applicable to territory including the eastern shore, in part as follows:   "The following estimated weights will apply in cars where actual scale weights cannot be ascertained.... Potatoes, white or sweet (in barrels) when it is practicable for agents to weigh same, will be charged at actual weight; but when it is not practical to weigh same, the following estimated weights will govern:   Sweet potatoes,—when shipped in common or truck barrels, per bbl., 170 pounds. White potatoes,—when shipped in common or truck barrels, per bbl., 180 pounds."   The contracts of car-

riage or bills of lading, provided: "Owners or consignees shall pay freight....according to weights ascertained by any carrier hereunder...."

The defendant collected freight for the plaintiff's potatoes on the basis of the estimated weights fixed by the above tariff. In February, 1906, the plaintiff brought suit to recover the difference between the freight paid, based on estimated weights, and that which he claimed should have been collected based on the actual weights; alleging that it had been practicable to weigh the shipments, and that he had continued to pay because he was kept in ignorance, by fraud and misrepresentation, of the fact that the freight was charged on estimated weights. Subsequently he twice amended his statement, and averred his bills of lading and that he was coerced into paying the freight. It was specially admitted in the court below by counsel for the defendant that, "The charges were made on estimated weights and not on actual weights," and that, if the plaintiff was entitled to recover under the evidence, the amount claimed by his counsel at trial was correct and would not be questioned.

The court charged the jury, inter alia: (a) "The important question for you to determine is whether or not it was practicable to weigh these potatoes, shipped from the points named down on the Eastern shore.... to the plaintiff here in Pittsburgh. It is claimed by the plaintiff that it was entirely practicable to weigh those potatoes. The defendant maintained it was not practicable." (b) "The plaintiff claims to have shown you that at a great many of those stations there were scales that could have been used, that it was practicable to use those scales at the points of shipment in order to ascertain the actual weight of the potatoes, and that the company should have done so and should have charged, as provided by the Inter-state Commerce Commission, for the actual weight instead of what was

shown to be the estimated weight. They claim that if it was not practicable to weigh the potatoes at all of the stations, yet they passed through a number where it was entirely practicable to do so, and that it was the duty of the defendant company and especially incumbent upon them, if they could not have them weighed at the other  points, to weigh them here in Pittsburgh, where the freight was payable by the plaintiff, and where it is claimed they have the facilities for weighing the potatoes. It was claimed they could readily have done this, and thus have determined the amount of freight to be paid by the plaintiff according to the actual weight of those potatoes. Now that is the question. Could they have done that at any of these points? Was it practicable for them to weigh these potatoes? Has the testimony on behalf of the plaintiff satisfied you by its weight that it was practicable, if so, the plaintiff is entitled to recover." (c) "Now that is the question. Could they have done that at any of these points? Was it practicable for them to weigh these potatoes? Has the testimony on behalf of the plaintiff satisfied you by its weight that it was practicable, if so, the plaintiff was entitled to recover. If he has failed in that respect, the burden being upon him, your verdict must be for the defendant. The defence claim he has failed, and has thought it unnecessary to offer any evidence, claiming the plaintiff has not made out his case. In other words, the plaintiff has not shown you by the preponderance of evidence, that it was practicable to weigh these potatoes. That is the question for you to determine, and if you determine that in favor of the plaintiff you allow him the amount of his claim, and if he has not done so, your verdict must be for the defendant company."

The verdict was for the plaintiff in the sum of $4,967.69; the defendant's motion for judgment non obstante veredicto was refused and judgment entered on the verdict. The defendant appealed.

Errors assigned: (1) Overruling defendant's objection to testimony in reference to claims on shipments made more than six years prior to the filing of the first amended statement, on the ground that new and different causes of action barred by the statute were introduced by the amendment. (2) Refusal of binding instructions for the defendant. (3) Refusal of defendant's point, "There is no evidence proper to submit as to the practicability of weighing the shipments of potatoes in question." (4) Refusal of defendant's point: "There is no evidence proper to submit as to the weight of the shipments of potatoes in question at the shipping points where the railroad, the N. Y. P. & N., received them." (5) The admission of testimony concerning weighing of cars as indicated by record cards. (6) The admission of testimony as to notations on certain cards, the cards not being produced. (7) Failure to instruct the jury specifically as to the meaning of the words "practicable" and "practical." (8) Portion of the charge "b" above quoted. (9) Portion of the charge "c" above quoted. (10) Refusal of judgment non obstante veredicto for the defendant. (11) The admission of testimony that there was a track scale at Delmar. (12) Admission of testimony that there were scales at Harrisburg and Altoona. (13) Admission of testimony that there were scales at Pittsburgh. (14) Refusal to continue the case because of a statement volunteered by the plaintiff when upon the stand, after warning by counsel for the defendant, the record of which is as follows: "s. In any instance did they charge you on the actual weight? A. No, sir. By Mr. Miller: Confine yourself to the cars in issue in this suit. By the witness: They did settle on actual weights on cars in 1905, but not in this case."

*James R. Miller* of *Patterson, Sterrett & Acheson*, for appellant.—The burden of showing that it was practicable to weigh these potatoes was on the plaintiff and

this burden was never met.  Consequently the plaintiff was not entitled to have his case submitted to the jury.

It is respectfully submitted that the admission of testimony as to the contents of the cards was contrary to one of the best known rules of evidence, the "best evidence" rule and was clearly error:  Hart v. Yunt, 1 Watts 253; McKinney v. Leacock, 1 S. & R. 27; Keely v. Ord, 1 Dallas 310; Buck v. Com., 107 Pa. 486; Brown v. Burr, 160 Pa. 458; Curtis v. Patton, 6 S. & R. 135; Stern v. Stanton, 184 Pa. 468; Grauley v. Jermyn, 163 Pa. 501; Milliken v. Barr, 7 Pa. 23; Buchanan v. Moore, 10 S. & R. 275; Eilbert v. Finkbeiner, 68 Pa. 243; Pratt v. Patterson, 81 Pa. 114; Gaskell v. Morris, 7 W. & S. 32; Barr v. Moore, 87 Pa. 385.

*Stephen Stone* of *Stone & Stone,* for appellee.—The form of action may be amended where there is no change in the cause of action:  Albertson Trust & Safe Deposit Co. v. Freedley, 18 Montgomery County Law Repr. 183: Jackson v. Gunton, 26 Pa. Super. Ct. 203; Knapp v. Hartung, 73 Pa. 290.

Payment of the freight charges was made under compulsion and plaintiff is entitled to recover it back: Louisville, Evansville & St. Louis Cons. R. R. Co. v. Wilson, 132 Ind. 517 (32 N. E. Repr. 311) ; Peters v. R. R. Co., 42 Ohio 275; American Steamship Company v. Young, 89 Pa. 186; Riley v. Willis, 5 Wharton 145; Root v. Allegheny River Railroad Company, 2 Foster (Pa.) 295.

A judgment will not be reversed, unless it is apparent from the record that an error has been committed and that such error materially injured the rights of the party complaining:  Allegheny v. Nelson, 25 Pa. 332; O'Donnell v. Lynch, 1 W. & S. 283; Safe Deposit Trust Co. v. Motheral, 8 Pa. Super. Ct. 433.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

The first amendment to the statement of claim was

allowed without objection or exception on the part of
the defendant, and while the second was objected to
upon the ground called to our attention by the first
assignment of error, it merely amplified the other
amendment and was not inconsistent with the original
statement; although new matter was averred the plain-
tiff made no real departure from the original cause of
action, namely, the overcharge in freight rates, and he
added nothing under which the damages could be in-
creased. "Amendments should be liberally allowed;
and the test of their propriety is whether they intro-
duce a new cause of action:" Knapp v. Hartung, 73
Pa. 290, 294; Vervaeke v. Adams Express Co., 230 Pa.
647. The testimony objected to was relevant to the
issues raised by the pleadings, and we see no error in
its admission.

The freight charges were collected by the appellant
company under contracts of carriage which provided
that the consignee should pay the freight according to
the weights ascertained by any carriers thereunder.
The official tariff stipulated that when it was "practi-
cable" for agents to weigh potatoes they should be
charged for at actual weight, but when it was not "prac-
tical to weigh the same," then estimated weights ac-
cording to the schedule were to govern; and that, "esti-
mated weights will apply in cases where actual scale
weights cannot be ascertained." The significant words
used are thus defined in Webster's New International
Dictionary: "Practicable, that that may be practiced
or performed; capable of being put into practice, done
or accomplished; feasible. Practical, syn.—see prac-
ticable." The bill of lading and the printed tariff
taken together indicate that these words were used in
their ordinary sense; they did not require any particu-
lar or elaborate construction on the part of the trial
judge. He left it to the jury to say under the evidence
whether the company could have accomplished the tak-
ing of the actual weight of the potatoes,—whether it

was feasible for them to have ascertained their actual weight.  The uncontradicted evidence showed that there were hand scales at the various stations of original shipment which had a capacity of 500 pounds, and that barrels of potatoes were at times actually weighed upon such scales; that at several points between those stations and the place of delivery there were track-scales capable of weighing carloads of potatoes, where such work was actually done; and that Pittsburgh, the terminal point, had track scales in the produce yard upon which the actual weight could have been taken.

It appears that when potatoes are weighed in the cars, the actual weight per barrel is ascertained by dividing the total weight less the weight of the car by the number of barrels.  This being so, it seems reasonable to assume that they could get the actual weight to almost as great a degree of certainty by weighing a number of barrels on hand-scales at the original point of shipment and accepting the average.  However this may be, we are not convinced that, under the documentary evidence, the court was wrong in submitting all of the opportunities for weighing the potatoes to the jury, for, had the defendant company desired, it could have written into its schedule and contract the stipulation that unless track scales existed at the original point of shipment potatoes should be charged for according to estimated and not actual weights.

The trial judge was wrong in permitting the testimony concerning the contents of the record cards which indicated that some of the cars in question had been actually weighed at a station en route called Delmar.  The cards themselves were the best evidence, and if the plaintiff desired to rely upon them to any extent he should have given notice to produce.  But since there was ample other uncontradicted testimony to sustain a finding that it would have been practicable to weigh the potatoes, we feel that the mistake can be treated as harmless error, and for that reason the

plaintiff should not be forced to a new trial.   Nor, under all the circumstances, are we inclined to reverse because of the incident called to our attention in the 14th assignment.   While the trial judge should at least have stricken the objectionable answer from the record and warned the jury to disregard it, yet since counsel for the appellant rested upon his exception to the refusal to withdraw a juror and continue the cause, and made no request of the court to warn the jury to disregard the answer, we think it is probable that all parties felt that no material harm had been done.   The defendant introduced no testimony; therefore, it was unnecessary for the trial judge to refer to the "weight" and "preponderance" of the evidence, but no possible harm could have been done thereby.

There was ample evidence to show that it was practicable to ascertain the actual weights, and that the freight payments were not voluntary.   After considering in detail each of the matters called to our attention we are not convinced of reversible error; the assignments are all overruled and the judgment is affirmed.