## Smith Appeal

*Fox, Differ & Honeyman,* for appellant.

94

DANNEHOWER, J., May 14, 1954.—The present case is before the court on the appeal of James F. Smith from the action of the Board of Commissioners of Lower Merion Township disapproving a subdivision plan of certain premises situated in the township and owned by the appellant.

Appellant avers in his petition for appeal, inter alia, that petitioner is the record owner of premises situated in the Township of Lower Merion between Mulberry Lane and Old Gulph Road; that on May 5, 1953, he submitted a subdivision plan of said premises into five lots to the township engineer of Lower Merion Township accompanied by an application for approval. The township engineer refused to approve the plan unless the township sanitary sewer was extended to serve all five lots with separate connections for each lot. Petitioner appealed to the Board of Commissioners of Lower Merion Township and after a hearing on May 13, 1953, the board, by resolution, disapproved the subdivision plan, requiring applicant to "install an extension to the sanitary sewer system to serve the five properties in question; in accordance with township regulations". Appellant avers that the action of the board in disapproving his application and subdivision plan was arbitrary, discriminatory, contrary to law, and imposes an illegal and unconstitutional burden on his property; and, furthermore, that article XXX(A) of the First Class Township Code of the Commonwealth of Pennsylvania and Land Subdivision Ordinance No. 921 of Lower Merion Township are unconstitutional in that they are violative of the Constitutions of the United States and the Commonwealth of Pennsylvania.

The appeal was heard de novo. The testimony has been transcribed and filed of record. From the evidence taken before this court, we make the following

## Findings of Fact

1. Lower Merion Township is a township of the first class and is located in Montgomery County, Pa.

2. In December 1949 appellant purchased 7.956 acres of land in Lower Merion Township situate on the southeasterly side of Mulberry Lane with a frontage thereon of 174.39 feet and running eastwardly some 945.25 feet to Old Gulph Road; the frontage on Old Gulph Road is 192.90 feet and immediately adjacent thereto is a creek known as, Mill Creek which is approximately 30 feet wide and 1½ to 2 feet deep.

3. On June 16, 1948, the Township of Lower Merion enacted ordinance no. 921, known as the Land Subdivision Ordinance of Lower Merion Township and adopted by resolution, land subdivision regulations designed to administer the ordinance.

4. Since 1938 appellant has been engaged in the business of building custom built homes ranging in price from $35,000 to $68,000.

5. During the years of 1949, 1950, and 1951, appellant met and consulted with municipal officers in an endeavor to construct a house fronting on Mulberry Lane at a distance of approximately 1,000 feet from the township trunk sewer on Old Gulph Road, but was unsuccessful by reason of his refusal to construct a branch sewer from his property to the trunk sewer on Old Gulph Road, as required by the township.

6. On November 5, 1952, appellant filed an application for approval of a lot location plan dividing his tract into five lots in accordance with plan prepared by M. R. and J. B. Yerkes, civil engineers, dated November 3, 1952.

7. Copies of said lot location plan were submitted to the township engineer, accompanied by an application for approval. After its review by the departmental committee (consisting of the heads of all departments of the township) the plan was approved by the town-

ship on condition that the township sanitary sewer be extended to serve all five lots in the subdivision and that a plan of the branch sewer be submitted prior to the issuance of the building permits.

8. On April 22, 1953, a sewer plan was submitted which was found to be satisfactory except that provision had to be made to reach the dead end manhole on the boundary line between lot no. 1 and lot no. 2 with a flushing truck, and the approval of the Water Power and Resources Board was required since the sewer plan of appellant provided for the crossing of the creek at approximately two feet above the existing creek bed.

9. On April 24, 1953, appellant was advised by the Water Power and Resources Board that any pipe crossing of streams or creeks had to be either below or above the waterway area necessary for flood flows and, therefore, they could not approve the proposed sewer plan of appellant.

10. On May 5, 1953, copies of subdivision plans were again filed with the township for approval. Approval was conditioned upon the satisfactory installation of a branch sewer system.

11. Appellant appealed to the board of commissioners of the township, and on May 14, 1953, the board notified appellant that he was required to install an extension from the township sewer system on Old Gulph Road to his five lots.

12. There is a fall of 110 feet from the level of Mulberry Lane and the level of Mill Creek, a distance of approximately 1,000 feet.

13. There is a township sewer in Mulberry Lane that dead-ends at a summit at Link Road and Mulberry Lane approximately 400 feet southwest of appellant's property, considerably upgrade, and consequently not available for the sanitary drainage thereof.

14. In Old Gulph Road, abutting appellant's property, there is a township trunk sewer, a manhole of

which is located in Old Gulph Road approximately 40 feet from appellant's bridge over Mill Creek, and in line with it.

15. While the branch sewer across appellant's land cannot be brought under the creek bed and connected directly with the township trunk sewer by way of the existing manhole on Old Gulph Road in line with the bridge, the sewer could be installed under Mill Creek and then down Old Gulph Road southeasterly at a distance of approximately 75 feet where a new manhole would be constructed. Under such a plan appellant would not traverse the property of others.

16. Appellant could also install a branch sewer on his ground by taking the sewer line across the bridge over Mill Creek at the level of the stone pier supporting the girder for the bridge and connecting with the existing manhole on Old Gulph Road. The sewer line as it entered the appellant's property adjacent to the bridge would be in fill for approximately forty feet necessitating a concrete pier under each bell of the pipe to properly support it. The pipe would not be exposed except as it went across the bridge.

17. The cost of sewering appellant's tract would be approximately $8,000, whichever of the two methods were utilized, covering approximately 1,000 feet of sewer line at $8 per foot.

18. Either of the two methods would probably be approved by the Water Power and Resources Board and would only, in a small degree, affect the beauty of appellant's tract.

19. There are presently four homes located on Mulberry Lane between Link Road and Old Gulph Road in proximity to appellant's tract, and the sanitary drainage in each case is provided by a cesspool; but there was either no subdivision involved or the properties did not abut a township sewer line.

20. When appellant first applied to the township for a permit to subdivide his tract, he offered to dedicate an additional 10 feet of right of way on Old Gulph Road and also on Mulberry Lane, so as to make the former 60 feet wide and the latter 50 feet wide.

21. Appellant will be compelled to connect houses to be built on lots nos. 4 and 5, fronting on Old Gulph Road, where there is a sanitary sewer and manhole, and as a practical matter, houses built on lots nos. 1, 2, and 3, fronting on Mulberry Lane could rather easily be connected to the sewer line for lots nos. 4 and 5.

### Discussion

Generally, the contentions of appellant are as follows:

1. The Land Subdivision Ordinance No. 921 of the Township of Lower Merion and the regulations adopted thereunder are invalid in that they were not enacted in accordance with the Enabling Act; and furthermore, constitute an unlawful delegation of legislative power by the municipal legislative body.

2. Article XXX(A) of the First Class Township Code and Land Subdivision Ordinance No. 921 are unconstitutional.

3. The action of the board of commissioners in disapproving appellant's subdivision plan as submitted was arbitrary, discriminatory, contrary to law and imposes an illegal and unconstitutional burden on petitioner's land.

Let us first consider the validity of the land subdivision ordinance no. 921 and the regulations adopted thereunder. Article XXX(A) of the First Class Township Code of May 31, 1947, P. L. 362, as amended, under which the township exercised its power to enact subdivision regulations provides that said regulations may be established by either an ordinance or by a resolution. The township in exercising the power

granted to it by the legislature enacted land subdivision ordinance no. 921 which in effect sets up a framework, providing, inter alia, for limitations upon the right of a subdivider to subdivide or sell any land in a subdivision, build, construct, lay out, open or dedicate any improvements in connection therewith unless certain requirements are followed. The ordinance also provided for the establishment of subdivision regulations which were to be "prepared by the Highway Committee and approved by the resolution of this Board . . .".

It is argued by appellant that under the Enabling Act the power was to be exercised either by ordinance or resolution and not by both. The court fails to see any merit in this contention. The township had the power to enact subdivision regulations by either method; certainly its exercise of the power in part by both methods should not render the legislation invalid. It is true that a municipality must, in enacting legislation, comply with the manner and method prescribed by statute, so that legislative action by resolution, when the procedure prescribed by statute is by ordinance, renders such action invalid. In re Lower Moreland Township Ordinance, 81 D. & C. 387 (1952). Such is not the situation here. The township had the power to utilize either method which it did in such a manner as appeared to it to be more convenient and inexpensive. If the land subdivision ordinance and the subdivision regulations were adopted solely by ordinance, advertisement and publication thereof would have been necessary, thereby entailing great expense because of the volume of the subdivision regulations.

It is also argued by appellant that the ordinance and resolution are invalid in that they constitute an unlawful delegation of legislative power from the municipal legislative body, the board of commissioners,

to the highway committee. It is well recognized that much of the work of municipal legislative bodies is done by and through committees. This method of performing portions of the public business is not forbidden, has existed from the beginning, and is sanctioned by judicial decisions: McQuillen, Municipal Corporations, vol. 4, §13.51, p. 551. In The Commonwealth v. City of Pittsburgh, 14 Pa. 177, 184 (1850) it was said:

"Corporations (municipal) may, and must often do their more important business through the instrumentality of committees. It is not forbidden, and has often been sanctioned by legal decision. I can see no objection to it. . . ."

Of more importance is the fact that the subdivision regulations became law only when approved by the board, and that, therefore, the board was the enacting body and not the Highway Committee. There is no evidence that the board had no discretion in determining whether the subdivision regulations were to be approved even though found unsatisfactory or oppressive. There was no unlawful delegation of legislative power; the board and not the highway committee was the enacting body.

It is also contended by appellant that article XXX(A) of the First Class Township Code and the land subdivision ordinance no. 921 enacted in pursuance thereto are unconstitutional. Special emphasis is placed by appellant upon the provisions in the enabling act and ordinance which prohibit the transfer or sale of any lot in a subdivision until a subdivision plan has been approved by the township: Sections 3064 and 3067 of article XXX(A); sections 2 and 3(b) of ordinance no. 921. The constitutionality of article XXX(A) and ordinances adopted thereunder was before President Judge Knight in the Lower

Moreland Township Subdivision Case, supra, wherein Judge Knight upheld generally their constitutionality, saying on page 390:

"Subdivision ordinances are a phase of community planning; they concern highways, recreation areas and public utilities and differ somewhat from zoning ordinances, which chiefly have to do with the use of land.

"The purposes of subdivision and zoning ordinances are similar in that they both are designed to effect an orderly and comprehensive development of the community so that the public health, safety, morals and welfare may be best promoted. The policy behind the subdivision ordinance is clear. It enables a community through long range planning to provide for future growth. By this method a community can provide for adequate highways in an increasing automotive age without the prohibitive cost of acquiring the necessary property by condemnation. Subdivision ordinances and zoning ordinances are rooted in the police power of the state, which delegates to municipalities authority to make reasonable laws to promote the public health, safety, morals and welfare. . . .

"Appellants do not attack the constitutionality of the ordinance or the enabling act as a whole and we will not discuss that phase of the case except to say that in our opinion the subdivision of land, particularly as it applies to highways, utilities and recreation areas, has a definite relation to the public health, safety and welfare and reasonable regulations affecting such subdivisions are well within the police power of the state and may be delegated by the legislature to townships of the first class. . . ."

One of the methods adopted by the legislature to effectuate the aims and objectives of the subdivision law is to prohibit the transfer or sale of any lot in a

subdivision until a subdivision plan has been approved. If such a provision were not enacted, the enabling act and the ordinance would be a nullity, for owners of subdivisions would transfer individual lots to vendees, who not being the owners of a subdivision would not be governed or affected by the ordinance.

After defining "subdivision" as the division of a single lot, tract, or parcel of land, or a part thereof into two or more lots, tracts, or parcels of land (section 3064), the statute makes a distinction between subdivisions wherein lots abut existing improved streets of sufficient width (section 3065) and subdivisions wherein lots abut existing streets of insufficient width or proposed streets (section 3066), which is the situation existing in the present case, as both Old Gulph Road and Mulberry Lane are of insufficient width, a fact recognized by appellant as well as the township, for appellant, when he first applied for a subdivision permit, offered to dedicate an additional 10 feet right of way on both roads.

The particular portion of the land subdivision regulations here in issue provides as follows:

"11. Sanitary Sewers.

"(a) Where required. Wherever practicable sanitary sewers shall be installed and connected to the township sanitary sewer system. . . .

"(e) On Site Facilities. When connection with the township Sewer System is impossible or impracticable, on-site sewage disposal facilities will be permitted. The adequacy of such facilities will be determined by the Plumbing Inspector."

Appellant argues that the words "wherever practicable" are vague and indefinite, so that there is a complete absence of specific rules and regulations defining the circumstances under which sewer connections will or will not be required, resulting, therefore, in unfair discrimination.

The court is of the opinion that the regulations do set up a suitable standard. Section 3066(c) of article XXX(A) provides that:

"Before approving any subdivision plan for recording, the board of township commissioners shall either require that the necessary grading, paving and other street improvements, including where specified by the board, curbs, sidewalks, street lights, fire hydrants, water mains, sanitary sewers and storm sewers, shall have been installed in strict accordance with the standards and specifications of the township. . . ."

The township is given the expressed discretionary power to impose sanitary sewer requirements upon the subdividers. The standard laid down by the township is sufficiently specific. The word "practicable" has been defined as meaning "capable of being put into practice, done or accomplished; feasible": Joynes, to use, v. Pennsylvania Railroad Company, 234 Pa. 321 (1912); Anverzagt v. Prestera et al., 339 Pa. 141 (1940). It includes the element of reasonableness: Benjamin v. Metropolitan St. Railway Co., 245 Mo. 598, 151 N. W. 91 (1912).

Whether connection with the township sewer is practicable or not will depend upon the circumstances of each individual case. Can the installation be effected without prohibitive expense or undue hardship. The standard adopted by the township is no more vague or indefinite than the standards set up in many of our zoning ordinances for the granting of a special exception or variance; namely, that a grant of a special exception be in harmony with the general purpose and intent of the zoning ordinance, and a variance be granted only where unnecessary hardship is shown.

It is well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, because some situations by reason of their very

nature require the vesting of some discretion in public officials, as when it is difficult to lay down a definite, comprehensive rule: 12. A. L. R. 1447. The words "wherever practicable" are words having meanings which are understandable to any person of average intelligence; they do not give the township absolute or uncontrolled power, but one which is limited by the circumstances of each case. Furthermore, any abuse of discretion or arbitrary action may be corrected upon appeal to the courts of quarter session: Article XXX(A), sec. 3066(*f*).

It is also argued by appellant that though the standard adopted may be sufficiently specific, it has been so administered and applied in the instant situation that it results in action which is arbitrary, capricious and discriminatory. It is true that some properties on the west side of Mulberry Lane are serviced by cesspools, but they were not parts of a subdivision, nor were they within reasonable proximity to any township trunk sewer where a connection could have been made. Since the properties are not similarly situated, the township's refusal to approve on site sewage with respect to appellant's property, while permitting the same on other properties in the vicinity cannot be classified as discriminatory. Nor can the requirement of the township be catagorized as unreasonable or capricious, as having no relation to the public health, safety, and welfare, for townships have frequently been plagued with sanitary drainage problems. In Hauser et al. v. Schwab et al., Montgomery County, June term, no. 15, equity, President Judge Knight said:

"The very large increase in population and the building of thousands of homes in large developments, particularly in our first class townships, have brought many problems to the public officials of townships and schools. . . .

"One overflowing cesspool in a neighborhood may prove a health menace."

While the installation of the branch sewer will impose some additional expense on appellant, it does not appear that the amount will be exorbitant or prohibitive. The cost will be approximately $8,000, which amount, after deducting the cost of on-site sewage, can be apportioned among the five homes to be built, which have a prospective selling price of $50,000 to $60,000, without affecting their marketability.

There are drawn the following

### Conclusions of Law

1. Article XXX(A) of The First Class Township Code of June 24, 1931, P. L. 1206, as added by the Act of May 31, 1947, P. L. 362, is not unconstitutional, and does not violate article XIV, sec. 1, of the Constitution of the United States, nor the rights of appellant under the Constitution of the Commonwealth of Pennsylvania.

2. Land subdivision ordinance no. 921 of June 16, 1948, and the land subdivision regulations adopted thereunder, are not unconstitutional, and do not violate article XIV, sec. 1, of the Constitution of the United States, nor the rights of appellant under the Constitution of the Commonwealth of Pennsylvania.

3. In view of the topography of the land, the proximity of appellant's subdivision to the existing township trunk sewer in Old Gulph Road, and the established policy of the township, the requirement by township as a condition of the approval of his subdivision that appellant install a branch service sewer to serve the five lots in his tract was reasonable and proper.

### Decree Nisi

And now, to wit, May 14, 1954, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the appeal of James F. Smith from the

refusal of the Board of Commissioners of Lower Merion Township to approve a certain subdivision plan be and it is hereby dismissed.

Appellant shall pay the costs.

### Order

The clerk of courts is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and if no exceptions be filed thereto within 10 days after the service of such notice to enter the decree nisi as a final decree.