TUBE REDUCING CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PROSECUTOR, v. UNEMPLOYMENT COMPENSATION COMMISSION OF THE STATE OF NEW JERSEY, BOARD OF REVIEW OF THE UNEMPLOYMENT COMPENSATION COMMISSION OF THE STATE OF NEW JERSEY, AND VITO J. CARLUCCI, DEFENDANTS.

Argued October 7, 1947—Decided January 19, 1948.

Before Justices Donges, Colie and Eastwood.

For the prosecutor, *Winne & Banta* (*Horace F. Banta,* of counsel).

For the Commission, *Charles A. Malloy* (*Herman D. Ringle,* of counsel).

For the Board of Review, *Clarence F. McGovern.*

For the defendant Carlucci, *Rothbard, Harris & Oxfeld* (*Samuel L. Rothbard,* of counsel).

The opinion of the court was delivered by

Colie, J.    Vito J. Carlucci, an employee of Tube Reducing Corporation, filed on August 23d, 1945, an initial claim for benefits under the provisions of the Unemployment Compensation Law, *R. S.* 43:21–1, *et seq.,* stating therein that the reason for unemployment was "lack of work."    Within a short time after the filing of the initial claim and prior to the payment of any benefits thereunder, Carlucci was recalled to work by the employer.    At about this time, the employer and the union of which Carlucci was a member were attempting to negotiate a new contract of employment.    On September 28th, 1945, the negotiations broke down, the employees ceased work and a picket line was established in which Carlucci served from time to time.    Three days later, the employer addressed a letter to the United States Employment Service, directed to the attention of the Unemployment Compensation Commission, advising it that certain of its named . employees, among whom Carlucci was one, had gone out on strike.    Thereafter Carlucci went to the office of the Commission and signed a form entitled "Continued Claim for Benefits" wherein he claimed benefits for the period from September 29th to October 8th, 1945.    The form in part reads: "2. I am unemployed, able to work and available for work; 3. I have not refused to work nor failed to apply for

work when so directed." At the bottom is a legend reading: "I sign this statement with full knowledge that the law provides for a fine of $50.00 for false statements to obtain benefits." Seven like claims were filed covering the period up to November 26th, 1945. What happened when the first of the series of continued claims was filed is best given in Carlucci's own words:

"Q. When you reported for the week ending October 5th, or 4th rather, did you tell them that you were out on strike? A. You mean when I went down the Unemployment?

"Q. That's right. A. Well, when I went down the Unemployment, all I did was walk up to the girl there and she says to me, are you working, and I says, no. That's the only question she asked me.

"Q. Didn't you know that while a place is on strike or a possibility of a strike, you're not entitled to any benefits? A. Well, as I said before, I didn't know whether there was a strike or not.

"Q. Well, what do you think? A. We were told it was a lockout and our union representative told us that we had— we could go down and apply for our unemployment compensation."

In the aggregate, unemployment benefits totaling $186 were paid. Thereafter the Commission wrote Carlucci that he was disqualified for benefits because the stoppage of work was due to a labor dispute and it made demand upon him for repayment of the benefits received by him. This holding was then reviewed by the Appeal Tribunal which rendered a decision on November 14th, 1946, holding that "as the claimant did not receive his benefits by reason of such misrepresentation or non-disclosure but in spite of the information fully disclosed by the employer on October 1st, 1946 (meaning 1945), there is no liability for refund and the question of whether the claimant was in fact eligible or disqualified, therefore, becomes an academic one and need not be determined as pertinent to this issue" there was "no liability for repayment of benefits" and reversed the decision of the deputy.

Tube Reducing Corporation then took an appeal to the Board of Review which affirmed the decision of the Appeal

Tribunal, whereupon it was allowed a writ of *certiorari* to review the decision of the Board of Review.

The underlying public policy behind the enactment of the Unemployment Compensation Act is stated in *R. S.* 43:21–2 and restated in *W. T. Grant Co. v. Board of Review*, 129 *N. J. L.* 402. That policy is to protect against involuntary unemployment. *R. S.* 43:21–4 sets forth with particularity the conditions that an unemployed individual must meet in order to be eligible for benefits. The following section *R. S.* 43:21–5 deals with disqualification and provides:

"An individual shall be disqualified for benefits: * * *

"(d) For any week with respect to which it is found that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the board of review that:

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

The evidence is that there were negotiations betwen the employer and Local 2583, United Steelworkers of America, C. I. O.; that on September 28th, 1945, all work ceased and thereafter there was a picket line and that the individual defendant went on it three or four days at the request of the local union. In the face of this undisputed evidence, we find as a fact that there was a "stoppage of work * * * because of a labor dispute" and that Carlucci was "participating in * * * the labor dispute."

414

So much for the main contention of the prosecutor. Additionally, there are two subsidiary questions to be discussed. The first contention is that Tube Reducing Corporation does not have such an interest as entitles it to prosecute this proceeding. We think otherwise, by reason of the provision in *R. S.* 43:21–7 that benefits paid·to an eligible individual are chargeable against the employer. The statement in the brief filed on behalf of Carlucci that the Unemployment Compensation Commission would not charge the payments against the prosecutor is no part of the record as certified to us and we therefore disregard it. We hold that prosecutor has a sufficient standing to prosecute the writ.

The Unemployment Compensation Commission takes the same position as the prosecutor of the writ but the Board of Review of the Unemployment Compensation Commission takes the position that while Carlucci may not be entitled to the money paid to him as benefits, the Board of Review is without jurisdiction to compel him to repay them. *R. S.* 43:21–16 (d), as amended *Pamph. L.* 1945, *ch.* 308, *p.* 900, § 4, furnishes a complete answer for it provides that:

"(d)·When it is determined by the deputy that any person, by reason of the non-disclosure or misrepresentation by him or by another, of a material fact (irrespective of whether such non-disclosure or misrepresentation was known or fraudulent) has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, such person shall, in the discretion of the commission, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the commission for the unemployment compensation fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in subsection (e) of section 43:21–14 of this Title for the collection of past-due contributions. The deputy shall promptly notify such person of the determination and the reasons therefor. Unless such person, within five calendar days after the delivery of such determination, or within seven calendar days after such notification was mailed to his or her

last-known address, files an appeal from such determination, such determination shall be final."

An examination of R. S. 43:21–14 (e) discloses that while it deals with the payment of contributions of employers, nevertheless it provides for the issuance by the commission of a certificate of indebtedness of an employer which upon being docketed in the Supreme or Common Pleas Court shall have the same force and effect as the entry of a docketed judgment and the commission may proceed thereon as it might upon a judgment at law upon contract.

This statutory procedure completely negatives the contention of the Board of Review that the remedy of the Commission to collect the benefits is by a common law action on the ground of unjust enrichment.

Finally, it is said that Carlucci does not come within the category of "any person, (who) by reason of the non-disclosure * * * of a material fact * * * has received * * * benefits." The argument is based upon an erroneous conception of the meaning of the statute. The brief filed by the Board of Review states "that Carlucci made no misrepresentation or refused to disclose a material fact at the time he filed his continued claims." Under the statute, the employee was under obligation to disclose all material facts and when he failed to disclose that the work stoppage at the employer's plant was due to a labor dispute, he thereby brought himself within the express terms of R. S. 43:21–16 (d).

The determination under review is reversed, and the matter remanded to the Board of Review of the Unemployment Compensation Commission to the end that a disposition may be made of the matter in accordance with the views herein expressed.