Philco Corporation, Appellant, *v.* Unemployment Compensation Board of Review.
McCullough Unemployment Compensation Case.

Argued March 17, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and ERVIN, JJ.

*Ronald Souser*, with him *Souser, Schumacker, Kleeb & Lunkenheimer*, for appellant.

*William L. Hammond*, Special Deputy Attorney General, with him *Frank F. Truscott*, Attorney General, for appellee.

*M. H. Goldstein*, for intervenors, appellees.

PER CURIAM, April 15, 1954:
The decision and order of the Unemployment Compensation Board of Review is reversed. The opinion of the Court will be filed at a later date.

OPINION BY HIRT, J., May 27, 1954:
The question in this appeal is whether 642 employes of the Philco Corporation are entitled to unemployment compensation benefits for any part of the vacation period between July 28, and August 10, 1952, when that employer shut down its plant for vacation purposes. It is agreed that the claim of Christine E. McCullough in the proceedings before the unemployment compensation authorities was typical both on the facts and the law, and is determinative of all the above claims. Her last day of employment immediately

prior to the shutdown was July 25, 1952. The Referee in a well reasoned decision denied benefits under §§402(b) and 401(d) of the Unemployment Compensation Law of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 PS §§802, 801. The Board however reversed and awarded compensation as claimed.

All of the claimants are members of one or the other of locals 101 or 102 of Radio and Television Workers Union, IUE-CIO. These unions were the collective bargaining agents for the claimants as to conditions relating to their employment. The subsisting agreements between Philco Corporation and each of the locals are identical in all material respects and provide for vacations with pay for various classes of employes based upon seniority in service.[1] The present claimants had less than three years of service and accordingly failed either to qualify for any vacation pay, or qualified for less than full pay for the two-week period of the vacation shutdown, depending, in each case, on length of service. The findings of the Board in substance are to the above effect.

---

[1] The collective bargaining agreements, as found by the Board, provided: "Article 4. Section 3. Vacation shall apply to all hourly rated employees on the active payroll for twenty five (25) weeks or more of the period from June 30th of the prior year to June 30th of the current year. The vacation pay shall be based upon the following schedule of seniority:

| Seniority | Vacation |
|---|---|
| Six (6) months to three (3) years | Forty (40) hours |
| Three years and over | Eighty (80) hours |
| Fifteen years and over | Eighty (80) hours plus one week's additional pay |

Employees who have over three (3) years seniority shall qualify for vacation if they have been on the active payroll for twenty (20) weeks or more of the above period . . . etc., etc."

The 6th provision of Article 4 of the agreements which gives rise to the present controversy is quoted in the Board's second finding as follows: "Section 6. The Company will make every effort wherever practical (A) to discontinue operations for a two week period and (B) this period to be the latter part of July and the first of August." The Board made these additional findings: "3. In accordance with this contract, the company elected to close the plant from July 28 through August 10, 1952, for vacation purposes" and "4. The claimants were ready and willing to accept suitable work if such work had been tendered to them during the period in question."

The Board in construing the above provision of Section 6 of the collective bargaining agreements held that "the vacation provisions here merely state that the company *may*, at its discretion, shut down its plants for a vacation period; albeit they will make every effort wherever practical to do so." In effect the holding was that the claimants' unemployment during the vacation period in this case was involuntary due to a layoff by the company, and not to a shutdown of the plant agreed to by the union on behalf of its members. Accordingly, the Board concluded that claimants were not disqualified under §402(b) of the Act. The Board, based on its 4th finding, also concluded that claimants on registering, were available for suitable work and accordingly were not disqualified under §401(d). In effect the Board in awarding unemployment compensation, held that claimants' eligibility for benefits was ruled by our decision in *Golubski Unempl. Compensation Case,* 171 Pa. Superior Ct. 634, 91 A. 2d 315. We are unable to agree with the conclusions of the Board. It is clear that claimants' unemployment during the vacation period was voluntary and therefore not compensable under §402(b) of the Act.

The two unions, between them, were the exclusive bargaining agents with the employer, for all members of both unions. Claimants therefore were bound by the present agreements entered into on their behalf comprehending all phases of labor-management relationship, including vacations and vacation pay. *Povey v. Midvale Company,* 175 Pa. Superior Ct. 395, 105 A. 2d 172. The bargaining agreements are in the evidence in their entirety. To arrive at the intent of the parties, Section 6 of Article 4 of the contracts cannot be wrested from its context but must be considered in connection with the agreements as a whole. Article 4, in all of its 6 sections, relates to holidays with pay and to vacations with pay allowances. Section 3 of the Article quoted in the margin, contains the agreement of the employer and the unions on behalf of claimants as to vacation cash payments which the company is obliged to make in accordance with the seniority schedules set forth therein. Section 3 is addressed to the amounts payable, not as bonuses to employes while working, but as cash benefits while on vacation.

Under our system of private enterprise an employer in general may operate his business as he sees fit, in the absence of restrictions imposed in a collective bargaining agreement. One of an employer's inherent rights is to determine vacation policy in his own business particularly as to whether vacations shall be on a staggered basis or whether the plant shall be shut down so that the employes may enjoy their vacations all at the same time. Consequently from the very fact that there are specific provisions in the present agreements for a vacation shutdown, it is a necessary inference that the union wanted to eliminate company discretion in this respect. In this instance when the unions in their agreements with the employer, after setting up schedules as to eligibility of employes to vaca-

tion pay according to seniority, provided that "the company will make every effort wherever practical to discontinue operations" for two weeks beginning the latter part of July, the unions as agents for claimants specifically agreed upon the shutdown. Certainly the phrase "wherever practical" in the vacation provision of the contract does not in itself convert voluntary cessation of work into involuntary unemployment, compensable as such. The intent of the provision is not, as the Board inferred: "That the Company *may* at its discretion shut down its plants for a vacation period." On the contrary, the only fair inference is that the contracting parties recognized that in an uncertain future a national, or even a lesser compelling emergency might make it impracticable to suspend production for two-weeks or to discontinue operations in all departments for such period, or to shut down for vacation purposes during the latter part of July and the first of August, rather than at some other more favorable or convenient time. The limiting phrase "wherever practical" does not reduce the obligations of the negotiated contract into a course of action to be performed or not, in the discretion or at the whim of the employer; it implies performance if feasible and capable of being put into practice by the exercise of every possible effort. Cf. *Joynes to use v. Railroad Co.*, 234 Pa. 321, 327, 83 A. 318. It is not without significance that the agreements on at least one other phase of employer-employe relationships limits the obligation of the employer to its "practical" aspects.[2]

The employes are protected against a decision of the employer, based upon whim or selfish motives by

---

[2] In section 3 of Article 5 it is provided: "Where practical the Company will not lay off employees until work falls below thirty-two (32) hours per week . . ."

section 3 of Article 8 of the contract which provides for common law arbitration of "all matters in controversy" between the company and the union, and names the arbitrator whose decision shall be final. Cf. *Povey v. Midvale Company,* supra. The unions in the agreements bound the company to discontinue operations for a two-weeks-vacation period, as to hourly rated employes. On the refusal of the company to comply, the question of the practicability of a shutdown as a matter in controversy could readily be decided with finality by invoking the arbitration provision of the agreements. Here the company recognized its obligation under the agreements and performed it by allowing a two-weeks vacation within the period designated and no question of practicability is involved.

Moreover in a real sense claimants were not unemployed and for that reason their idleness during the vacation period was not compensable. They were not laid off; there was no termination of employment nor even suspension of the employer-employe relationship during the period. A vacation is a period of freedom from duty, not an end of employment. *Dauber's Case,* 151 Pa. Superior Ct. 293, 30 A. 2d 214. Their continued employment was insured by their bargaining agreements; their names were still on the pay-roll even though they did not receive vacation pay. The contract of employment persisted, under which they returned to their work at the end of the vacation period without loss of seniority. The agreements in Article 2 provide for a work-week of 40 hours of 8 hours per day, from Monday through Friday. The scheduled vacation period was no different in principle from the normal uncompensated week-end shutdown from Friday to the following Monday, incident to the 40-hour week.

The above principles in our view clearly called· for a reversal of the decision of the Board. And we need not refer to the 4th finding supra, under which the Board concluded that claimants were not disqualified under §401(d), except to say that the record does not support the finding; the testimony of claimant Mc-Cullough is equivocal and indicates an intention to return to her employment with the appellant at the end of the vacation period and· not to accept employment in the meantime. Here, clearly, the registration for work was an empty formality lacking in sincerity.

This appeal in every aspect is ruled against the claimants by *Mattey Unemployment Comp. Case,* 164 Pa. Superior Ct. 36, 63 A. 2d 429, and not by the *Golubski* case, supra. In the *Mattey* case, as here, the shutdown was for the benefit of the employes and their temporary unemployment was voluntary; in the *Golubski* case the unemployment was involuntary and for the benefit of the employer.

These are the reasons for our order of March 14, 1954, reversing the decision of the Unemployment Compensation Board of Review.