**YOBE, Plaintiff-Appellant, v. SHERWIN-WILLIAMS COMPANY et, Defendants-Appellees.**

Common Pleas Court, Trumbull County.

No. 63278.   Decided June 11, 1954.

Herschel Kriger, Canton, for plaintiff-appellant.
C. William O'Neill, Atty. Genl., John W. Hardwick, Asst. Atty, Genl., Columbus, for Administrator and Board of Review, Bureau of Unemployment Compensation.

## OPINION

By McLAIN, J.

This is an appeal to the Court of Common Pleas of Trumbull County, Ohio, from the decision of the Board of Review of the Bureau of Unemployment Compensation rendered on the 24th day of December, 1953, wherein this claimant was denied unemployment compensation.

The claimant was employed by The Sherwin-Williams Company at Hubbard, Ohio, and commenced work on April 15, 1953. The production workers of the plant were given their annual vacation periods, pursuant to a union contract, from July 20, 1953, to August 3, 1953.

The claimant herein was not entitled to vacation pay under the terms of a collective bargaining agreement which was in effect between the employer and the union of which this claimant was a member during his employment.

Article VII of the agreement provided, in substance, that those with over a year's service were entitled to a week's vacation pay per year; those with three years' service, two weeks' vacation with pay, and those with fifteen years' service, three weeks' vacation with pay. The claimant was of course not entitled to a vacation with pay inasmuch as he did not have the requisite one year's service.

Said Article VII contained a further provision which indicates that it was the intention of the parties to the contract that those who did not have the necessary period of service to qualify for vacation would be employed, insofar as possible, as part of a maintenance crew at such jobs as might be available. The exact language is as follows:

". . . The company may, at its option, shut down the plant in June, July, August or September for the vacation period. Notice of such shutdown shall be given the employees by April 1st of the year in which the shutdown occurs. The company shall have the right to select a maintenance crew to work during the shutdown and to receive their vacations at other times. Those employees who do not qualify for a vacation at the time of the shutdown may be scheduled to work at such jobs as may be available . . ."

The transcript shows that some employees did work during that time including some not entitled to vacations. and others who took their vacations later. This work was performed on maintenance only, cleaning windows, painting, and so forth, there being no production work done at the plant from July 20th to August 3rd.

The record also shows that the claimant asked the supervisor for maintenance work such as cleaning windows and so forth. The record further shows that during this period, the claimant did actively seek work in other industrial plants in the area.

The Referee in this case reasons as follows in arriving at his decision which was, in effect, adopted by the Board of Review in disallowing the claimant's application for benefits:

"The question to be determined at this time is whether claimant was voluntarily or involuntarily unemployed during

the period covered by the weeks ending July 25, and August 1, 1953. In substance, the contractual agreement existing between the bargaining agent of the employees and the management of the company establishes that the company may, at its discretion, shut down the plant for vacation purposes during the month of June, July, August or September. When a company and a union which is the bargaining agent for all employees, whether members of the union or not, agree to a shut down during a period chosen by the employer for the purpose of granting employees vacation, there can be no doubt but what the employees agree not to work in that place of employment during that period. The question of whether or not they are eligible for vacation pay for all or part of the period is of a secondary nature. Some of the employees, because of the length of their service, may receive pay for the entire period, others for part of the period, while still others receive no pay at all. There is not, in cases of this character or, in fact, in this case, a severance of the employer-employee relationship existing between the workers of the company, the worker knowing that at the expiration of the vacation period he will be returned to his job and continued thereon. In the present instance, that is exactly what happened. After the vacation period was over claimant did return to his employment . . . .

"In line with the foregoing, it is apparent, therefore, that claimant. through the contract of his bargaining agent, agreed to the vacation period and, consequently, for the weeks in question was not involuntarily but voluntarily unemployed, and does not thereby meet the statutory requirements with regard to eligibility for unemployment compensation . . . ."

In other words, the position taken by the Board was that the claimant was voluntarily unemployed during the shut-down for the vacation period and, therefore, not entitled to unemployment compensation.

This issue has been before the Courts in a number of cases in various states since the enactment of unemployment compensation laws, and authority can be found to support both the position of the Bureau of Unemployment Compensation, and the position of the claimant in this case.

In view of this fact, since this question has not been decided by the Supreme Court of the State of Ohio, it appears to be the duty of this Court to determine which line of authority is based upon the sounder reasoning.

The case of **Reid v. Board of Review, 155 Oh St 6,** a case which originated in this county, is not in point. The Court held in that case that the claimant. being on a paid vacation at the time she filed her application for unemployment com-

pensation was, in effect, still employed and, therefore, was not then eligible for unemployment compensation under the provisions of §1345-6 GC.

An entirely different factual situation exists in this case in which the claimant was unemployed, actively seeking employment and was not on a paid vacation because of a lack of eligibility due to his brief period of service.

The Supreme Court of Ohio has expressly held in the case of **Leonard v. Board of Review, 148 Oh St 419,** as follows:

"It is generally held that no hard and fast rule as to what constitutes availability for work can be adopted: that availability depends in part on the facts and circumstances in each case."

In interpreting the statutes of Ohio, §1345-1 through §1346-4 **GC,** the Legislature has also issued a directory to the Courts as follows:

"**Sec. 1345-33 GC. Sec. 1345-1** through §1346-4, inclusive, **GC,** should be liberally construed to accomplish the purposes thereof."

It should also be borne in mind that the purpose of unemployment compensation legislation, which has been adopted by the Legislatures of so many states, is not only to avoid the serious conditions of economic insecurity suffered by the individual, but likewise is part of a plan to assist in the stabilization of unemployment conditions in the interests of the general welfare, and such legislation is entitled to a fair and liberal interpretation not only by virtue of the express direction of the Legislature but also to effect the plain purposes of the legislation itself.

These principles are plainly recognized by the Supreme Court of Ohio in the case of **Leonard v. Board of Review, 148 Oh St 419.**

In the case of American Bridge Company v. Review Board, et al., (Ind.) 98 N. E. (2d) 193, under similar facts, the Court stated:

"One of the express purposes of the Indiana Employment Security Act is to provide for employees who are unemployed through no fault of their own. There is nothing within the provisions of the union contract which would give rise, even inferentially, to a reasonable construction that employees who were not eligible for vacations were affected in any way by the designation of the vacation period for eligible employees. Certainly, the employees who were not eligible for vacation have not by any reasonable interpretation to be placed upon the terms of sect. 11c(2) of the bargaining agreement consented to any action by the company which would permit the designation of a period of vacation without pay for them . . . .

"Appellant advances the further argument that since the express purpose of the Employment Security Act is to avoid the serious menace of economic insecurity, that a vacation without pay is not economic insecurity within the compass of the legislative declaration of public policy. To the worker who depends upon his weekly paycheck for his daily bread, it would appear to be tortuous reasoning indeed to say that a vacation without pay does not constitute 'economic insecurity.' "

This same case also answers the question raised that there was no severance of employment. There is no provision whatsoever in the Ohio statutes that requires a severance of employment. The Indiana Court stated on that question as follows:

"Since the 'encouragement of desirable stable employment' is contained within the legislative declaration of policy and purpose of the Indiana Employment Security Act, it can hardly be seriously contended that the Legislature intended to adopt any doctrine of a necessity for permanent severance of the employment relation. In order to have stabilization of employment, both for industry and workers, the fact that a worker expects to resume his previous employment should and does not, under the Indiana Employment Security Act, constitute a bar to his being unemployed, under the act, and entitled to benefits if otherwise qualified."

The matter of the severance of employment is also answered in the case of Golubski v. Unemployment Compensation Board of Review, Superior Court of Pennsylvania decided October 1, 1952, and reported in 91 Atlantic, 2d Series, page 315.

The Court in that case passed on a number of cases classified in two groups. One, those who under a union contract were entitled to one week vacation pay, and one week lay off status while the plant was closed for taking inventory.

The Court held this group not entitled to unemployment compensation for the week that the employees were not paid for the reason that said week constituted the waiting period required by the Pennsylvania Act. However, the Court held in respect to the second group, those who were ineligible for a vacation and were placed on a lay-off status for two weeks, were entitled to unemployment compensation.

The Court stated that the fact the employees desired to return to work with the company after lay-off did not deprive them of the right to unemployment compensation.

The conclusion, under the circumstances existing in our case, that the claimant is entitled to compensation is also supported by the Supreme Court of Errors of Connecticut in

the case of Schettino v. Administrator, Unemployment Compensation Act, et al., 83 Atlantic Reporter, 2d Series, page 217, the Court said:

"Where employee was out of work because his regular job was not open to him due to the act of employer in shutting down the plant, an employee registered for work with employment service, and was physically and mentally able to work, he did all that reasonably could have been expected of him to expose himself to the labor market, and was entitled to unemployment benefits."

The Court in that case reasoned that availability for work in order to receive benefits of unemployment compensation must be arrived at under a subjective test of eligibility. To be available for work within the meaning of the Unemployment Statute, one must be ready, willing, and waiting to accept suitable employment and must be exposed unequivocably to the labor market.

The issue in this case is also discussed in the Compensator. Third Quarter, 1947, published by the Bureau of Unemployment Compensation and referred to in 6 CCH Unemployment Compensation Service (Ohio) par. 1901.01:

"An individual is not eligible for benefits during any period of bona fide vacation, that is, during any period in which he voluntarily refrains from working with the consent of his employer and at the expiration of which he expects to return to work. At such time the assumption is that the individual is voluntarily unemployed and is not available for work. Very few vacations provided by contract fall within this class. Generally, the contract provision is for a plant shutdown for a designated period, for which period workers are paid in proportion to their length of service or earnings. Such a shutdown is held to be a temporary law-off and employees unemployed during a vacation shutdown and who receive no vacation pay, or pay in an amount less than their weekly benefit amounts, are eligible for benefits.

It appears in this case that the claimant's unemployment during the shutdown period or vacation period was not due to a genuine rest period, but due to an insufficient amount of work to employ him during that period under the terms of the contract.

A similar conclusion has been reached by the Courts of New York State. See Levy et al. v. Todd Shipyards Corporation, 110 New York Supplement, 2d series, page 612.

The foregoing cases, and others not here considered, appear to constitute the decided weight of authority on the issue in this case.

Contrary thereto are several Common Pleas Court decisions

in Ohio. In the case of Arrells, et al. v. The Board of Review of the Bureau of Unemployment Compensation, Case No. 619521, in the Common Pleas Court of Cuyahoga County, the Court said:

"The idea of something for nothing has grown in this country to exaggerated proportions in recent years and certainly, we believe, should not be encouraged by the Court's attempting to write into legislative enactments and into contracts something which does not exist and which was never intended to exist.

"To hold that the appellants (claimants) are correct in their contentions would create a situation most undesirable both to labor and management. There would be no incentive or reason on the part of the employer to bargain with the employee concerning paid vacations inasmuch as all vacations, regardless of length, would be paid from the Unemployment Compensation Fund."

The statement in the foregoing case that there would be no incentive or reason on the part of employer to bargain with the employee concerning paid vacations inasmuch as all vacations, regardless of length, would be paid from the Unemployment Compensation Fund seems entirely beside the point for the reason that there is no contention about paid vacations that question having already been decided by the Supreme Court of Ohio in the case of Reid v. Board of Review, supra.

Furthermore, the enactment of unemployment laws has been widespread. It is unlikely that there has been legislative intent to merely provide for legalized handouts, although unemployment benefits do afford some personal relief to distressed individuals, the broader purpose of such benefits is to, in some measure, guard against the impact of unemployment on the general economy.

Such laws should be given full force and effect as enacted, and it is not conducive to the general welfare that any one should be deprived of the benefits of unemployment compensation who comes fairly within the intendment of the act.

The case of Moen v. Director of Division of Employment Security, et al., Supreme Court of Massachusetts, 85 North Eastern 2d Series, page 779, probably represents the minority view. The Court in that case held:

"Under collective bargaining agreement that employees who had been with employer for a certain time were eligible for vacations with pay, and that temporary shutdown in any department was authorized for such vacation period, unemployment during vacation period of an employee who was not yet eligible for vacation with pay was 'voluntary,' and he was

therefore not eligible for unemployment benefits under Employment Security Law."

There is, however, a very important and controlling factual difference in the Massachusetts case as it does not appear that the employer therein agreed to provide work for those who were ineligible because of insufficient service on maintenance crews during the shutdown period.

It will also be observed that §1345-6 GC, sets forth in great number and detail, situations wherein benefits are not payable. Therefore, under the well recognized doctrine of statutory construction inclusio unius est exclusio alterius, it could well be reasoned that said section does not evince any legislative intent to deny benefits to those ineligible for vacation pay.

It seems hardly necessary to engage in such speculation, however, because of the broad principle that those who have complied with the terms of the Unemployment Compensation Act of Ohio are eligible under §1345-6 GC, should be allowed compensation.

There is also an absence in the Massachusetts statute of the provision found in §1345-9 GC, to wit,

"No agreement by an employee to waive his right to benefits under this act shall be valid."

Otherwise, the Supreme Court of Massachusetts could not have found that the claimant's rights were surrendered to the union, and that he was bound by any agreement made on his behalf.

It is the purpose of the Unemployment Compensation Act of Ohio to insure, in limited measure, against unemployment of individuals regularly attached to the labor market where the unemployment is not occasioned with their consent or by their fault.

It is a fair statement in this case that the contract between the employee and the union did not contemplate that those ineligible for paid vacations should be voluntarily unemployed for the reason that the contract itself states that the employer would attempt to provide employment on maintenance or other work for those not entitled to vacation benefits. and it was plainly the unavailability of that work that resulted in the claimant being unemployed.

Therefore, after a consideration of the record, statutes applicable thereto, and the authorities, this Court has reached the conclusion that the claimant was not voluntarily unemployed during the two week period in question; that the union contract specifically contemplated that employment on maintenance would be made available to this claimant during the

vacation shutdown; that he sought such employment and also employment elsewhere in the area; that for the foregoing reasons, his unemployment was not due to the vacation period but was caused by the inability of the employer to furnish him employment and not, therefore, being voluntarily unemployed, he is entitled to the benefits of unemployment compensation, and the decision of the Board of Review being contrary to law, the same is hereby reversed.