## Shadowens Unemployment Compensation Case. General Electric Company *v.* Unemployment Compensation Board of Review.

Argued November 9, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*John E. Britton,* with him *Gifford, Graham, Mac-Donald & Illig,* for employer, appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Benjamin C. Sigal* and *Bert Diamond* submitted a brief for International Union of Electrical, Radio & Machine Workers, C. I. O. et al., amici curiae.

OPINION BY WRIGHT, J., December 27, 1954:

These are appeals by the General Electric Company, hereinafter referred to as the Company, from decisions of the Unemployment Compensation Board of Review allowing benefits to employes ineligible for vacation pay during a plant shutdown for vacation purposes. The facts are undisputed. Claimants were employed by the Company either at the Erie Works (Appeals Nos. 26, 27, and 28), or at the Philadelphia Works (Appeals Nos. 29 and 30). The Erie claimants were represented for collective bargaining purposes by the United Electrical, Radio and Machine Workers of America (UE), and the Philadelphia claimants by the International Union of Electrical, Radio and Machine Workers (CIO). A collective bargaining agreement

was entered into by the Company with each of said Unions, by virtue of which it was provided: "Those Works shutting down annually for vacation purposes shall consider the vacation season to run concurrently with the shutdown period". Subsequent to the execution of these agreements, the Company fixed dates for the year 1952 during which the Erie Works and the Philadelphia Works would be shut down for vacation purposes. The period for the Erie Works was from August 9 to August 24, and for the Philadelphia Works was from August 4 to August 17. Under the vacation clause in the respective agreements, employes were granted one week of vacation with pay after completion of one year of continuous service, two weeks after five years, and three weeks after fifteen years. We are here concerned only with those in the first two classes.

As stated by the able counsel for the Board, the question involved is: ". . . can those employes who did not receive any vacation pay or were paid for only one week of the shutdown be considered eligible for unemployment compensation benefits during the unremunerated portion of the shutdown?" In our view, the controlling issue is whether the temporary idleness of the claimants was the type of economic insecurity due to involuntary unemployment without fault which was within the contemplation of the legislature in the enactment of the Unemployment Compensation Law.[1]

The ground upon which the Board predicated the allowance of benefits was that the contracts here under consideration do not fix specific dates for the vacation shutdowns. The Board took the position that the

---

[1] Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751 et seq.

agreements leave it to the discretion of the employer whether the plants would close for vacation purposes, and that the shutdowns were not a conclusive obligation upon the employer but were actually for its benefit. Consequently, reasoned the Board, claimants did not agree to the resulting idleness; they were not off duty because of their own fault; they did not voluntarily leave work under Section 402(b) of the Act (43 PS §802) ; they were "unemployed" within the language of Section 4 (u) (43 PS §753) ; and, having properly registered, they were available for suitable work under Section 401(d) (43 PS §801).

The situation of an employe on vacation without pay was first considered at length in *Mattey Unemployment Compensation Case,* 164 Pa. Superior Ct. 36, 63 A. 2d 429. In that case provision for an annual vacation period, from June 27 to July 7, was incorporated in the collective bargaining agreement. In affirming the Board's decision refusing to allow benefits (speaking through President Judge RHODES) we said:

"It is true that during the vacation period claimant performed 'no services', and with respect to which 'no remuneration' was paid or payable to him. To that extent he was 'unemployed'. See section 4 (u), 43 PS §753 (u). However, the relationship of employer and employe was not terminated, and there was no suspension of that relationship. Under the agreement between the employer and the United Mine Workers of America, of which claimant was a member, his employment was preserved to him. The vacation or the leave of absence which he enjoyed was by virtue of his agreement. The vacation provided by the agreement was a period of freedom from duty but not the end of employment; 'vacation' implies continued service . . . The agreement was negotiated on behalf of

claimant and all the other members of the United Mine Workers of America, and it provided for the vacation period for all mine employes. The effect of the agreement is the same as if claimant had himself requested time off for a vacation, or other personal reason, and it had been granted by his employer. Such mutuality does not create a state of unemployment under the statute, which entitles claimant to unemployment compensation benefits. The situation was created by claimant's duly selected bargaining agents; their acts were his acts; to the temporary cessation of work the employer and employe agreed. The circumstances afford no basis for the claim that he was unemployed within the meaning of the Unemployment Compensation Law . . .

"If we assume that claimant was 'unemployed' within the provisions of section 4 (u) of the Act, he was nevertheless ineligible for benefits under section 402 (b) of the Act, which bars compensation for any week in which his unemployment is due to voluntarily leaving work without good cause. The fundamental social purpose of the Unemployment Compensation Law is to provide relief from the rigors of involuntary unemployment. Obviously persons unemployed through their own fault are not within the intendment of the Act . . . Claimant's unemployment, if any, was due to his own voluntary act . . . His agreement with his employer, negotiated through his union, provided for a vacation without pay where prior service was not considered sufficient to warrant such payment. Hence, the stopping of work in this case was from choice. He was not 'unemployed' 'through no fault of his own'. Although the employer consented to the vacation, the leaving or absence from work was entirely voluntary on the part of claimant, there being a total absence of compulsion . . .

"We are also of the opinion that claimant, under the facts, would not be entitled to compensation benefits because he was not available for work within the meaning of section 401 of the Act . . .

"We have said that, ordinarily, a claimant, an unemployed worker in a covered employment, is presumed to be entitled to benefits when he registers for work and files a claim; but such presumption is rebuttable . . .

"The test of availability requires claimant at all times to be ready, able, and willing to accept suitable employment, temporary or full time. Claimant had a regular position with the Glen Alden Coal Company to which he would return after ten days' vacation. His absence from work was voluntary, temporary, and in accordance with his agreement with his employer. It cannot be said that he was 'actually and currently attached to the labor force' . . . which is a basic purpose of the statutory requirements.

"Claimant's application for benefits and registration for work were not made until July 2, 1947, the sixth day of the vacation period, and at that time there were only four days remaining, two of which were the fourth of July, a legal holiday, and July 6th, which was Sunday. Claimant had known since the beginning of his employment in April that he could not work long enough to become eligible for the vacation pay under the agreement between his union and his employer; he also knew that the vacation would start June 27th. With only two working days remaining between July 2 and July 7, 1947, he was not actually available for work of any kind; and we think the registration for work, under the circumstances, was a mere formality. Claimant had not quit his job, and he had not been discharged. As he elected to continue his existing employment, he was not 'available.' Any pre-

sumption of availability was rebutted by the undisputed facts.

"The purpose of the Unemployment Compensation Law has been set forth in the declaration of public policy in section 3 of the Act . . . and reference has been made thereto in numerous decisions of the appellate courts. The unemployment compensation reserves established thereunder should be used for the payment of benefits to those who come within the objective of the Act. Payments must be made in accordance with its avowed purposes, and the Act must be given a realistic interpretation. The Act does not contemplate 'a compensated vacation from work' . . . nor should it become 'an invitation to a compensated rest' ".

In arriving at its conclusion in the case at bar, the Board attempted to distinguish the *Mattey* case, relying upon *Golubski Unemployment Compensation Case,* 171 Pa. Superior Ct. 634, 91 A. 2d 315. But in the *Golubski* case, our decision rested upon the conclusion that the shutdown was an act of the employer for his own benefit, the taking of inventory. It should be further noted that, in the *Golubski* case, those employes not entitled to any paid vacation were expressly "to be on the lay-off status". The authority of the *Golubski* case was limited by our recent decision in *Philco v. Unemployment Compensation Board of Review,*[2] 175 Pa. Superior Ct. 402, 105 A. 2d 176. In the *Philco* case, the agreement provided that "the Company will make every effort whenever practical (A) to discontinue operations for a two week period and (B) this period to be the latter part of July and the first part of August". The decision of the Board allowing benefits was reversed.

---

[2] Our opinion in the *Philco* case had not been handed down when the Board passed upon the instant appeals.

We are unanimously of the opinion that the fundamental basis upon which the *Philco* decision rests is controlling as well of the factual situation presented by the case at bar. In the *Philco* case Judge HIRT said:

"The Board in construing the above provision of Section 6 of the collective bargaining agreements held that 'the vacation provisions here merely state that the company *may*, at its discretion, shut down its plants for a vacation period; albeit they will make every effort wherever practical to do so'. In effect the holding was that the claimants' unemployment during the vacation period in this case was involuntary due to a layoff by the company, and not to a shutdown of the plant agreed to by the union on behalf of its members. Accordingly, the Board concluded that claimants were not disqualified under section 402(b) of the Act. The Board, based on its 4th finding, also concluded that claimants on registering, were available for suitable work and accordingly were not disqualified under section 401(d). In effect the Board in awarding unemployment compensation, held that claimants' eligibility for benefits was ruled by our decision in Golubski Unempl. Compensation Case, 171 Pa. Superior Ct. 634, 91 A. 2d 315. We are unable to agree with the conclusions of the Board. It is clear that claimants' unemployment during the vacation period was voluntary and therefore not compensable under section 402(b) of the Act . . .

"Moreover in a real sense claimants were not unemployed and for that reason their idleness during the vacation period was not compensable. They were not laid off; there was no termination of employment nor even suspension of the employer-employe relationship during the period. A vacation is a period of freedom from duty, not an end of employment. Dauber's Case, 151 Pa. Superior Ct. 293, 30 A. 2d 214. Their con-

tinued employment was insured by their bargaining agreements; their names were still on the pay-roll even though they did not receive vacation pay. The contract of employment persisted, under which they returned to their work at the end of the vacation period without loss of seniority. The agreements in Article 2 provide for a work-week of 40 hours of 8 hours per day, from Monday through Friday. The scheduled vacation period was no different in principle from the normal uncompensated week-end shutdown from Friday to the following Monday, incident to the 40-hour week . . .

"The above principles in our view clearly called for a reversal of the decision of the Board. And we need not refer to the 4th finding supra, under which the Board concluded that claimants were not disqualified under section 401(d), except to say that the record does not support the finding; the testimony of claimant McCullough is equivocal and indicates an intention to return to her employment with the appellant at the end of the vacation period and not to accept employment in the meantime. Here, clearly, the registration for work was an empty formality lacking in sincerity.

"This appeal in every aspect is ruled against the claimants by Mattey Unemployment Comp. Case, 164 Pa. Superior Ct. 36, 63 A. 2d 429, and not by the *Golubski* case, supra. In the *Mattey* case, as here, the shutdown was for the benefit of the employes and their temporary unemployment was voluntary; in the *Golubski* case the unemployment was involuntary and for the benefit of the employer".

The agreements in the case at bar expressly provide for vacations which, in some instances, could be without pay. Claimants are bound by the action of the Union as their agent in negotiating the agreements: *Povey v. Midvale Co.,* 175 Pa. Superior Ct. 395, 105 A.

2d 172. Ample notice was given that the shutdowns would occur between specified dates, and that they were for vacation purposes. The Unions did not protest the shutdowns or the periods designated. The shutdown at the Erie Works affected 11,500 employes, and at the Philadelphia Works affected 5,800 employes. It would be virtually an impossible task to schedule individual vacations for each and satisfy all. The solution of the problem by means of a shutdown for vacation purposes was contemplated by the agreements. This result was not brought about by the employer for its own benefit, but was for the purpose of providing the employes with benefits to which they were entitled by virtue of the agreements. The idleness of the claimants was therefore voluntary under section 402(b). Furthermore, as pointed out in the *Mattey* and *Philco* cases, claimants can not be considered as "unemployed", or as "available for suitable work", or as actually within the class of persons contemplated by the legislature in the declaration of public policy (43 PS §752), which sets forth the purpose of the Act. It is our conclusion that the Company was acting legally within the provisions of the collective bargaining agreements, and that claimants are not entitled to benefits.

Decisions reversed.