WILLIAM E. GLOVER, PLAINTIFF-RESPONDENT, v. SIM-
MONS COMPANY, DEFENDANT-APPELLANT, AND
DANIEL LEEDS MILLER, INC., PINGRY SCHOOL AND
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SE-
CURITY, NEW JERSEY DEPARTMENT OF LABOR AND
INDUSTRY, DEFENDANTS-RESPONDENTS.

Argued December 13, 1954—Decided January 24, 1955.

*Mr. Nicholas Conover English* argued the cause for the defendant-appellant (*Messrs. McCarter, English and Studer,* attorneys).

*Mr. Clarence F. McGovern* argued the cause for the Board of Review, Division of Employment Security.

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of the Superior Court, Appellate Division, which affirmed a decision of the Board of Review of the Division of Employment Security awarding unemployment compensation benefits to the respondent, Glover, for the weeks ending July 12, 1953 and

July 19, 1953, in which period the plant of the appellant, Simmons Company, was shut down for a vacation period.

On February 13, 1953 Glover commenced his employment with the Simmons Company and designated the Upholsterers' International Union of North America, A. F. of L., as his representative for the purpose of collective bargaining. The union had consummated an agreement with the Simmons Company which provided for paid vacations of one week for employees with one to five years of service, of two weeks for those with five or more years, and of three weeks for those with at least 15 years; Art. VII, sec. 1 and 2 of the agreement. It was stipulated that those who were entitled to one week would take the vacation for 1953 during the week beginning July 6; those with two weeks would be off for two weeks beginning July 6; and those whose service qualified them for three weeks would take the first two during the same two weeks of July and the third at a time to be selected by the management. The plant shut down on July 6, 1953, solely for the two-week vacation period.

Glover, whose employment had started in February 1953, therefore was not qualified for a vacation with pay, and was notified that he was being laid off for two weeks.

The Board of Review in allowing benefits found as a fact that the respondent Glover was, during the period in question "able to work, available for work and has demonstrated that he was actively seeking work." R. S. 43:21–4(c). It likewise found as a fact that he was involuntarily unemployed. These findings were concurred in by the Appellate Division.

The Appellate Division stated that R. S. 43:21–15 expressly provides "Any agreement by an individual to waive, release, or commute his rights to benefits * * * shall be void," and that the Legislature had thus established the public policy of our State which could not be circumvented by any decision of the court or any agreement entered into in good faith between the employer and the labor union, and that the effect of this section is to remove the possibility of

waiver or the release of such benefits from the area of collective bargaining.

It further held that employees without right to vacation under a contract, such as this, are out of work through no fault of their own and therefore involuntarily unemployed and entitled to unemployment benefits.

Certification of this case was granted by this court under *R. R.* 1:10–2(*d*)(*e*).

The question presented is whether an employee, who was a member of a labor union which negotiated a collective bargaining agreement with an employer for vacation with pay after certain periods of service, and whose period of employment did not reach the minimum fixed by the contract to entitle him to vacation pay, is entitled to unemployment compensation when the plant is closed down for vacation period in accordance with the contract.

The question is one of novel impression in this State.

The appellant's argument is premised upon the contention that the statute provides unemployment compensation only in cases of involuntary unemployment and that respondent's unemployment was voluntary since he agreed to accept the vacation privilege of the collective bargaining agreement between the appellant and the union.

On the other hand, the argument made in favor of respondent is that the meaning of "voluntary unemployment" should be limited to idleness because the claimant will not work.

In view of the statutory provisions the question is not without some difficulty and the cases in other states are divided, though the weight of authority is with the appellant. Those that proceed under the theory of agency hold that the union contract providing for these vacations was in effect entered into by the employee through his representative union acting as his agent and that by taking an unpaid vacation the employee is voluntarily unemployed and thus not eligible for benefits. The following cases more or less follow that theory: *Moen v. Director of Division of Employment Se-*

*curity,* 324 *Mass.* 246, 85 *N. E.* 2d 779, 8 *A. L. R.* 2d 429 (*Sup. Jud. Ct.* 1949) ; *Malley v. Unemployment Compensation Board of Review,* 164 *Pa. Super.* 36, 63 *A.* 2d 429 (*Super. Ct.* 1949) ; *Jackson v. Minneapolis-Honeywell Regulator Co.,* 234 *Minn.* 52, 47 *N. W.* 2d 449 (*Sup. Ct.* 1951) ; *Philco Corp. v. Unemployment Compensation Board of Review,* 175 *Pa. Super.* 402, 105 *A.* 2d 176 (*Super. Ct.* 1954).

Other courts have taken the view that an employee without a right to vacation pay under the contract is out of work through no fault of his own and therefore entitled to unemployment benefits. *Schettino v. Administrator, Unemployment Compensation Act,* 138 *Conn.* 253, 83 *A.* 2d 217 (*Sup. Ct.* 1951) ; *American Bridge Co. v. Review Board of Indiana Employment Security Division,* 121 *Ind. App.* 576, 98 *N. E.* 2d 193 (*App. Ct.* 1951).

However, the problem before this court is the construction of the statute in our own State, and we are confined to discovering the true intent of the various applicable provisions.

*R. S.* 43:21–2, *inter alia,* provides:

"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. *Involuntary* unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family." (Italics supplied.)

*R. S.* 43:21–4, *inter alia,* provides:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if it appears that:

\*        \*        \*        \*        \*        \*        \*        \*

(c) He is able to work, is available for work, and has demonstrated that he is actively seeking work."

*R. S.* 43:21–5, provides:

"An individual shall be disqualified for benefits:
(a) For the week in which he has left work *voluntarily* without good cause, and for each week thereafter until he has earned in em-

ployment (which may be with an employing unit having in employment one or more individuals) at least four times his weekly benefit rate, as determined in each case." (Italics supplied.)

*R. S.* 43:21–15 provides:

"No employer shall directly or indirectly * * * require or accept any waiver of any right hereunder by any individual in his employ."

*R. S.* 43:21–19(m) provides:

"An individual shall be deemed 'unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate."

■ The construction of a broad sweeping remedial statute such as this is controlled by the rule that the manifest policy of a statute is an implied limitation on the sense of the general terms and a touchstone for the expansion of the narrower terms, *Wene v. Meyner,* 13 *N. J.* 185 (1953), and the judicial function is to interpret and reconcile statute phraseology in the light of legislative purpose, *De Lorenzo v. City of Hackensack,* 9 *N. J.* 379 (1952).

■ The motive which led to the enactment of the statute is one of the most certain means of establishing its true sense, and it is not the words of the law but the internal sense of it that makes it law; and the declared policy is the key to the understanding of the statute. *Valenti v. Board of Review of Unemployment Compensation Comm.,* 4 *N. J.* 287 (1950); *In re Roche's Estate,* 16 *N. J.* 579 (1954).

■ In *W. T. Grant Co. v. Board of Review of Unemployment Compensation Commission,* 129 *N. J. L.* 402 (*Sup. Ct.* 1943), Mr. Justice Case stated that the public policy upon which the unemployment statute is built is to achieve social security by affording protection against this greatest hazard of our economic life, involuntary unemployment. That is the touchstone of the statute and this same view has

been expressed and approved in *Tube Reducing Corp. v. Unemployment Compensation Commission,* 136 *N. J. L.* 410, 413 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 177 (1948); *Valenti v. Board of Review of Unemployment Compensation Comm., supra,* 4 *N. J. p.* 292; *cf. Ludwigsen v. New Jersey Department of Labor and Industry,* 12 *N. J.* 64 (1953); *Krauss v. A. & M. Karagheusian, Inc.,* 13 *N. J.* 447 (1953); *Campbell Soup Co. v. Board of Review, Division of Employment Security,* 24 *N. J. Super.* 311 (*App. Div.* 1953), reversed 13 *N. J.* 431 (1953).

It seems to us that the status of a vacation period for employees was recognized in modern industrial relations prior to and at the time of the enactment of this statute. It was a commonly accepted fact that a workman could not be expected to work every single day of the year, and most enlightened employers recognized there would be certain periods of the year when service would not be rendered although the employment relationship remained intact and they assumed the duty of paying remuneration to their employees during such period. Experience had demonstrated that lack of suitable arrangements for vacation could be and possibly sometimes was a threat to the health, morals and safety of the individual. But the matter was not subject to public regulation and was left by common assent to negotiations between the employer and the employees or their representatives.

■ Since it was a fact of common knowledge it was undoubtedly recognized by our Legislature that paid vacations were an incidental benefit which was and could be negotiated in any agreement respecting compensation for service. Therefore, it does not seem to us that it was within the statutory policy enunciated by *R. S.* 43:21–2 to forbid contracts of employment not unreasonable in their terms as respects the statutory scheme of compensation for "involuntary unemployment."

■ The statute declares a public policy relating to "economic insecurity due to [involuntary] unemployment," and

a contract of the class before the court in this case, for a short vacation period, can and should be considered a part of the compensation plan involving the employees as a whole, and is not the involuntary unemployment calling for relief under the statute. In this respect the case at bar is distinquishable from that of *Campbell Soup Co. v. Board of Review, Division of Employment Security, supra,* where under the company's retirement policy the employee was required to leave his job permanently at the age of 65.

The statute by its very terms does not insure or guarantee an employee a salary payment for each and every week of the employment period. The availability for work qualification, *R. S.* 43:21-4(*c*), is plainly indicative of a legislative intent that the unemployment alone is insufficient.

As stated before, the Legislature has not undertaken to guarantee vacations with pay to all employees but has left this matter to negotiation between the employer and employee. Where such negotiation produces a contract calling for regular vacations with pay subject to reasonable restrictions as to the term of employment before such right accrues and becomes available to a new employee, it cannot be said that such agreements trespass on the declared policy of the statute to the extent that the section on waiver, *R. S.* 43:21-15, should be called into play. To hold otherwise would amount to judicial legislation indirectly awarding to all employees vacations with pay.

The construction contended for by the respondent could place an additional burden on the employer and cause some to seek a change in the enlightened attitude held by most employers that paid vacations are proper incidents of the employer-employee relationship. To the employee a vacation with pay is a distinct advantage from a monetary standpoint and contributes to his personal morale and health. It is a common impression, derived from a simple observation of the facts, that such a vacation is a definite contribution to the social welfare of his family.

Such contracts of employment are based upon the idea of permanent employment and the probable continuance of employer and employee relationship, and where the rights to such vacation benefits are not unduly restricted from the point of time as to eligibility on the part of the employee and do not create an unreasonable economic hazard for the employee, we cannot say that they run afoul of the policy of the statute as it applies to involuntary unemployment resulting from the hazards of economic life.

Benefits are to be paid to aid the employee who is laid off by the mal-functioning of the general economy or necessitated by the economic vicissitudes of his employer's business. Thus it is quite proper to provide benefits to an employee thrown out of a job temporarily because of a layoff necessitated by lack of business for the plant or for other reasons from which a substantial benefit will inure to the employer. Therefore, R. S. 43:21–19(m)(1) should not be given a literal abstract reading, but its interpretation should be limited and it must be construed reasonably and consistently in the light of the entire philosophy of the statute heretofore set forth. *Wene v. Meyner, supra.*

Reading the various applicable sections of the statute in the light of the declared policy stated therein, we have concluded that the respondent Glover is not entitled to the benefits awarded below.

The judgment of the Appellate Division is reversed and the cause remanded to be proceeded with consistent with the views expressed in this opinion. No costs.

BURLING, J. (dissenting). The defendant employer, Simmons Company, contended that the plaintiff's, Glover's, unemployment for the two-week period for which Glover sought statutory relief, was voluntary under R. S. 43:21–5(a), thereby disqualifying him. R. S. 43:21–5(a), *supra,* declares disqualification for leaving work "voluntarily *without good cause.*" (Emphasis supplied.)

The defendant's argument that Glover's leaving work was voluntary was premised upon vacation provisions contained in Article VII of a collective bargaining agreement between the defendant and the union of which Glover was a member. The pertinent provisions read:

"3. Effective 1952 employees who have at least fifteen (15) years accredited service as of September 30, 1952 will receive three (3) weeks vacation with pay. The first two (2) weeks of their vacation to be taken during the shutdown period and the third week to be taken at a time selected by Management.

\*       \*       \*       \*       \*       \*       \*       \*

5. All employees with sufficient amount of service to receive two (2) weeks vacation will take their vacation the second two (2) weeks of July, 1953, commencing July 6th.

6. All employees with sufficient amount of service to receive one (1) week's vacation will take their vacation the second week in July, 1953, commencing July 6th."

The court has heretofore held that a collective bargaining agreement is binding upon members of the union party thereto. *Kennedy v. Westinghouse Electric Corp.*, 16 *N. J.* 280 (1954). The *Kennedy* case, *supra*, concerned contractual "fringe" benefits and the effect thereon of obligations of the employees and the union with reference to work stoppages. The *Kennedy* case, *supra*, was not concerned with statutory unemployment compensation benefits and therefore is not pertinent to the present matter. The conclusions in the present case must rest upon the statute and the facts considered in the light of sound judicial philosophy.

The defendant argues that a vacation is a period of freedom from duty, not an end of employment. *Philco Corp. v. Unemployment Compensation Board of Review*, 175 *Pa. Super.* 402, 105 *A. 2d* 176 (*Super. Ct.* 1954); *Kelly v. Administrator, Unemployment Compensation Act*, 136 *Conn.* 482, 72 *A. 2d* 54 (*Sup. Ct. Err.* 1950). This viewpoint encompasses the assumption that the rate of pay for working hours includes a portion allotted to a vacation granted without pay. This assumption is negatived when no vacation without pay or at reduced pay is expressly agreed upon and

other employees are expressly granted vacations with pay. *Golubski v. Unemployment Compensation Board of Review,* 171 *Pa. Super.* 634, 91 *A. 2d* 315, 30 *A. L. R. 2d* 362 (*Super. Ct.* 1952). *Cf. American Bridge Co. v. Review Board of Indiana, etc.,* 121 *Ind. App.* 576, 98 *N. E. 2d* 193 (*App. Ct.* 1951). Judge Hirt, who wrote the opinion in the *Philco Corp.* case, *supra,* and voted with the majority in the *Golubski* case, *supra,* distinguished the two cases on the facts. In the *Golubski* case, *supra,* the contract terms (not discernibly different from those in the matter *sub judice*) were held not to contemplate vacations without pay but were held to constitute an involuntary layoff during a shutdown period in which employees entitled to vacations were required to take them. In the *Philco Corp.* case, *supra,* the distinguishing feature was the contractual provisions which related to vacations in terms that conceivably could include payless and reduced pay vacations. Thus in the *Golubski* case, *supra,* unemployment compensation was granted, but in the *Philco Corp.* case, *supra,* unemployment compensation was denied. The *Philco Corp.* case, *supra,* followed *Mattey v. Unemployment Compensation Board of Review,* 164 *Pa. Super.* 36, 63 *A. 2d* 429 (*Super. Ct.* 1949) but approved the *Golubski* case, *supra.* The *Mattey* case, *supra,* involved a union contract construed as expressly providing vacations, both paid and payless, to be taken during a stated vacation period. In the *Kelly* case, *supra* [136 *Conn.* 482, 72 *A. 2d* 55], the union contract called for a shutdown period and expressly provided "such week shall be deemed a week of vacation." Not only was this so, but the circumstances proved in the *Kelly* case, *supra,* were that the individual plaintiffs each had received pay from the employer for that period. The Supreme Court of Errors of Connecticut in the *Kelly* case, *supra,* found "Each of these payments approximated $50, a sum in excess of the individual's weekly unemployment benefit rate." (72 *A. 2d,* at *page* 55). In the *Kelly* case, *supra,* the decision was expressly related to the agreement (72 *A. 2d,* at *page* 56):

"* * * It is the plain intendment of that statute [*Conn. General Statutes*, § 7508] that, when there is an agreement in the contract of employment for a vacation and compensation is provided in an amount substantially equivalent to the pay an employee would have received for services rendered if he had actually worked, he is not eligible for unemployment benefits during the period of his vacation."

Comparable to the *Kelly* case, *supra*, is *American Central Mfg. Corp. v. Review Board of Indiana Employment Security Division*, 119 *Ind. App.* 430, 88 *N. E. 2d* 256 (*App. Ct.* 1949). *Cf. Wellman v. Riley*, 95 *N. H.* 507, 67 *A. 2d* 428 (*Sup. Ct.* 1949). In the *Wellman* case, *supra*, the employee had also received vacation pay for the week for which he sought unemployment compensation.

The defendant in the present case stressed among other decisions of courts in other jurisdictions, the *Mattey* case, *supra; In re Buffelen Lumber & Mfg. Co.*, 32 *Wash. 2d* 205, 201 *P. 2d* 194 (*Sup. Ct.* 1948); *Jackson v. Minneapolis-Honeywell Regulator Co.*, 234 *Minn.* 52, 47 *N. W. 2d* 449 (*Sup. Ct.* 1951); *Moen v. Director of Division of Employment Security*, 324 *Mass.* 246, 85 *N. E. 2d* 779, 8 *A. L. R. 2d* 429 (*Sup. Jud. Ct.* 1949); and *Paden City Pottery Co. v. Board of Review*, 7 *C. C. H. Unemployment Ins. Rep. W. Va.* § 8090 (*W. Va. Cir. Ct.* 1949). *Cf. In re Rakowski*, 276 *App. Div.* 625, 97 *N. Y. S. 2d* 309 (*App. Div.* 1950); *Naylor v. Shuron Optical Co., Inc.*, 281 *App. Div.* 721, 117 *N. Y. S. 2d* 775 (*App. Div.* 1952); *Beaman v. Bench*, 75 *Ariz.* 345, 256 *P. 2d* 721 (*Sup. Ct.* 1953). It seems to me that the *Jackson, Mattey, Buffelen, Moen* and *Paden City Pottery Co.* cases, *supra*, were properly distinguished by Judge Baldwin in his opinion written for the Supreme Court of Errors of Connecticut in *Schettino v. Administrator, Unemployment Compensation Act*, 138 *Conn.* 253, 83 *A. 2d* 217, 219 (1951), upon the ground that the statutory provisions underlying the decisions in the foreign cases provided disqualification for mere voluntary leaving of employment, whereas the Connecticut statute limited the disqualification by the use of terms including the phrase "without sufficient

cause." The *Kelly* case, *supra*, was also distinguished in the *Schettino* case, *supra*, on the facts, and unemployment compensation was awarded to Schettino. It should be noted that *Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.* 447, 465 (1953), turned on the question whether the employee voluntarily left work without good cause.

It seems clear to me that the disqualification for benefits obtains only where there is an express agreement providing for vacations without pay, or where vacations with pay are accepted by the claimants, or where the statutory disqualification of "voluntary" leaving of employment is not limited by the phrase *"without good cause"* or phraseology comparable thereto. In the contractual terms in the present case it seems to me that the shutdown period was merely recognized by the union as a time when plant functions would be stopped, as a matter of company convenience and policy, regardless of the desires of the employees. No agreement to voluntarily cease employment was expressed, nor was any payless vacation adverted to. Under these circumstances it seems to me no waiver may be inferred even if waiver of statutory benefits were to be deemed valid. See *R. S.* 43:21–15. *Cf. Yobe v. Sherwin-Williams Company*, 122 *N. E. 2d* 202 *(Ohio Com. Pl.* 1954). There is nothing within the provisions of the union contract which would give rise, even inferentially, to a reasonable construction that employees who were not eligible for vacations were affected in any way by the designation of the shutdown period as a vacation period for eligible employees.

On this view of the case, the question is whether Glover left work "without good cause." It seems to me that the decision of this court in *Campbell Soup Co. v. Board of Review, Division of Employment Security*, 13 *N. J.* 431, 435 (1953), is controlling. In this respect it seems to me the *Campbell Soup Co.* case, *supra*, requires the holding here that the cessation of work was *with* good cause, *i. e.*, not the result of personal reasons of the employee but the result of company policy imposed upon the employees through the

medium of recognition in their collective bargaining agreement.

For the reasons hereinabove set forth I would affirm the judgment of the Superior Court, Appellate Division.

Mr. Justice WACHENFELD and Mr. Justice JACOBS authorize me to state that they join in the views expressed in this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and BRENNAN—4.

*For affirmance*—Justices WACHENFELD, BURLING and JACOBS—3.